[Crim. No. 4334. In Bank.—February 21, 1941.]

THE PEOPLE, Respondent, v. WILLIAM JOHANSEN, Appellant.

No appearance for Appellant.

Earl Warren, Attorney-General, and David K. Lener, Deputy Attorney-General, for Respondent.

CURTIS, J.—The defendant, William Johansen, was charged in two separate informations with the murder of two human beings in the city and county of San Francisco. In one information he was charged with the murder of Lena Coffin on the 6th day of April, 1935, and in the other the charge was that he had murdered Irene Chandler, known also as Irene McCarthy, on the 24th day of June, 1940. The two informations were filed on July 18, 1940. Defendant interposed to each information pleas of not guilty, and not guilty

by reason of insanity. He subsequently withdrew his pleas of not guilty and waived a jury, and went to trial on October 14, 1940, before the court on his pleas of not guilty by reason of insanity. The two cases were consolidated for trial. Prior to the date of trial the court had appointed two alienists, Dr. Tilton E. Tillman and Dr. Margaret H. Smyth, the former a member of the Lunacy Commission and the latter being at the time of her appointment Medical Director and Superintendent of the Stockton State Hospital.

At the close of the evidence the court found the defendant sane and fixed his punishment at death, and thereafter pronounced judgments in each case in accordance with the penalty so fixed. The appeals from these judgments under section 1239 of the Penal Code are automatic. While defendant was represented by the Public Defender in the trial court, there has been no appearance on his behalf in this court and no brief has been filed by him personally or otherwise. The Attorney-General has filed a statement setting forth a summary of the evidence in the case and such matters as he deems pertinent.

The only witnesses at the trial were the two alienists and the defendant. The latter identified three statements made by him to prosecuting officers after his arrest and prior to his trial, which, upon proof of their authenticity, were introduced in evidence without objection upon his part.

The qualifications of each of the alienists were admitted by counsel for the defendant. Dr. Tillman was first called as a witness and identified the written report which he had made to the court as to defendant's mental state. His report bore the date of October 10, 1940, and was as follows: "This is to certify that I have examined William Johansen on two different occasions at the County Jail and have had a long interview with his present wife who is a resident of Long Beach, California, and that I have been in consultation with Dr. Margaret Smyth of Stockton State Hospital, and I find that William Johansen is sane and competent."

He further testified that he had read the confession of defendant, meaning the three statements just referred to, and had questioned the defendant respecting each of the crimes of which he was accused, and gave as his opinion that the defendant was sane when he committed "both murders".

Dr. Smyth, the other alienist appointed by the court to examine the defendant, was then sworn as a witness and testi-

fied that she was Medical Director and Superintendent of the Stockton State Hospital and had been there ten years; that at the request of the court she had examined the defendant and had made a written report to the court as to his mental condition. This report was addressed to the court and was by the court read into the record of the case. It was as follows:

"Enclosed please find result of examination together with my opinion of the mental condition of William Johansen.

"I found him to be quiet and composed, his conversation coherent and rational. He gave the story of his life from childhood and stated that he had suffered a great deal due to continued references to his having been an illegitimate child.

"He gave no evidence of hallucinations or delusions. His memory was good. He had been educated to the eighth grade in school. He said he had been able to make a fairly good living for himself and family.

"He declared there had never been anything abnormal in his sexual life in spite of all that has been said in the newspapers about him; that his present trouble is due to the effects of drink, and he now wishes to withdraw both pleas—guilty, and not guilty by reason of insanity—in order to avoid further distress to his wife. He feels that he has the best wife in the world and has decided this is the only thing for him to do.

"It is my opinion that this man is not insane and that he knew the difference between right and wrong at the time of the commission of the acts charged against him."

At the close of the reading of this report Dr. Smyth, in answer to a question propounded to her by the court, stated that the defendant was legally sane at the time he committed the offenses with which he was charged, "these two murders". On cross-examination, Dr. Smyth reaffirmed her opinion respecting the sanity of the defendant at the time the offenses were committed.

The defendant then took the witness stand in his own behalf and gave testimony respecting the two murders charged in said informations. When upon cross-examination he was shown the three statements hereinbefore alluded to, he admitted making the same, that he signed each of them, and that they correctly reflected the questions asked him and his answers to said questions. These statements, which may be

referred to as his confession, were thereafter admitted in evidence.

His testimony given at the trial and these three statements give a detailed history of the defendant from his birth to the time of his arrest immediately following the death of Irene Chandler. It is not necessary to set forth this evidence at any great length. We deem it sufficient to state that it shows that defendant was born in Denmark and brought to this country at an early age. He attended school at Beverly, Massachusetts, and finished the eighth grade. He enlisted in the Army at an early age, but deserted after a short service. He then went to New York, where he married his first wife. After they had two children born to them, dissension arose between him and his wife. He visited her one night about midnight. They engaged in an encounter, and he choked her to death, and afterwards mutilated her body by opening her abdomen to determine whether she was pregnant as she had claimed that she was in that condition. He then shipped as a seaman, and some eighteen months thereafter arrived in San Francisco early in the year 1935. On April 5, 1935, one evening on Market Street he met Lena Coffin. They went to a nearby hotel and secured a room. They sat around the room about an hour, when he grabbed her by the throat and strangled her to death. He then mutilated her body by cutting out her breast. He left the hotel and soon shipped out of San Francisco on a boat leaving for Portland. He spent considerable time on the Gulf of Mexico and in Texas, but returned to San Francisco, and on June 24, 1940, he met Irene Chandler, known also as Irene McCarthy, in a beer hall on Fifth Street. They had a number of drinks together and both were fairly well intoxicated. He bought a bottle of whiskey, and they went to a nearby hotel and engaged a room. The woman immediately undressed and went to bed. He did the same and found that she had "passed out". He tried to arouse her but she would not wake up. He grabbed her by the throat and choked her to death. He then mutilated her body, washed himself and left the hotel. That same day he took a bus for Los Angeles.

We, of course, are not concerned with the murder committed by defendant in New York. The only excuse he gave for this crime was that his wife threw a flower pot at him. In explanation of the murder of Lena Coffin he stated, "I don't know, something came over me and I grabbed a hold of

her by the throat." Referring to the killing of Irene Chandler, he said, "I guess a mania must have seized me again and I grabbed her by the throat and choked her while she was lying in bed . . . put pressure on her windpipe." He had sexual intercourse with neither of his victims, although he stated that he went to the hotel in each instance for that purpose. He made no rational explanation as to the reason he mutilated their bodies.

After he had testified and his confession had been read into the record, both Dr. Tillman and Dr. Smyth were recalled to the witness stand, and each stated that the evidence to which they had just listened confirmed them in their opinion that the defendant was sane at the time he committed the two murders of which he was accused.

The cases were then submitted to the court for its decision, which was as follows: "The Court finds the defendant sane at the time of the commission of the two murders alleged in the informations." At a later date the court pronounced judgment in each case by sentencing the defendant to death.

There can be no question but that the evidence before the court fully justifies the finding of the court that the defendant was sane at the time he committed the crimes of which he was charged in the informations.

The evidence against the defendant in each of these two cases establishes beyond any doubt that defendant is guilty of murder in the first degree, as charged in each information herein. The action of the trial court in imposing upon defendant the extreme penalty under the law should therefore be sustained. Each of the judgments against defendant is affirmed.

Houser, J., Traynor, J., Edmonds, J., Shenk, J., Carter, J., and Gibson, C. J., concurred.